ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
MOQA-AQYOL JV, LTD. ) ASBCA No. 60456
)
Under Contract No. W5J9JE-10-C-0031 )

APPEARANCE FOR THE APPELLANT: Thomas J. Fraser, Jr., Esq.
  Eavenson, Fraser, Lunsford & Ivan
  Jacksonville, FL

APPEARANCES FOR THE GOVERNMENT: Thomas J. Warren, Esq.
  Acting Engineer Chief Trial Attorney
  Daniel B. McConnell, Esq.
  Rebecca L. Bockmann, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Middle East
  Winchester, VA

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON APPELLANT'S MOTION FOR RECONSIDERATION

MOQA-AQYOL JV, LTD. (MOQA) has filed a motion for reconsideration of our decision in *MOQA-AQYOL JV, LTD.*, ASBCA Nos. 57963, 60456, 17-1 BCA ¶ 36,909, in which we denied MOQA's challenge to the default termination and its money claim. MOQA's motion concerns only the money claim, ASBCA No. 60456.

## DECISION

The standards for deciding a motion for reconsideration are well established. Reconsideration does not provide a party an opportunity to reargue issues that were previously raised and decided. *Precision Standard, Inc.*, ASBCA No. 58135, 16-1 BCA ¶ 36,504 at 177,860. The movant must establish a compelling reason to modify the earlier decision. *Id.* We look to whether the movant presents newly discovered evidence, mistakes in findings of fact, or errors of law. *Id.* A motion for reconsideration does not provide a litigant a "second bite at the apple" or the opportunity to advance arguments that properly should have been presented in an earlier proceeding. *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014).

While MOQA sought damages in four discrete categories, it challenges our determination with respect to only one: $842,587.23 for work performed through the date of termination. It does not seek reconsideration of our decision with respect to

materials and equipment left on site or consulting fees paid to Kevin Cato. (App. mot. at 23)

We conclude that MOQA's motion falls squarely in the "second bite at the apple" category: its 30-page motion for reconsideration contains far more facts and arguments relating to damages than it presented in its post-hearing brief, which was devoted mainly to the termination for default. But there is nothing in MOQA's motion that leads us to change our opinion.

The crux of MOQA's motion is that it accomplished more work than reflected in the amount that it has been paid. As detailed in our opinion, the project was in a remote area of Afghanistan and none of the witnesses testifying at the hearing had spent any significant time at the site. *MOQA*, 17-1 BCA ¶ 36,909 at 179,811, findings 3, 5. As the party with the burden of proof on its money claim, this presented a challenge to MOQA that it could not overcome. None of MOQA's witnesses testified as to any specific facts that would allow us to award MOQA more money than the Corps paid.

In calculating the final payment due MOQA, we found that there was internal disagreement at the Corps as to whether MOQA had completed 20 or 25% of the work, but it went with the higher number. Our opinion detailed the many problems the Corps discovered with MOQA's work. *See MOQA*, 17-1 BCA ¶ 36,909 at 179,828-29. In light of these problems, we held that the contracting officer did not abuse his discretion in having the replacement contractor remove most of MOQA's work, including the foundation for the headquarters building, the perimeter wall and foundation, and the guard tower support columns. *Id.* Our conclusion was, and remains, that MOQA was paid 25% of the contract price even though it accomplished relatively little.[1] There is no basis for the Board to increase the amount paid.

MOQA contends in its brief that we misunderstood testimony by the Corps quality assurance representative, Chester Lawrence. It contends that when he testified as to problems with the concrete and rebar it pertained only to MOQA's claim for materials left on site, which is a separate issue (app. mot. at 28). MOQA is incorrect to the extent it suggests that Mr. Lawrence's testimony supports a higher payment to MOQA. To the contrary, it was Mr. Lawrence who concluded that MOQA had completed only 20% of the project based on all of the defective work that had to be removed. *MOQA*, 17-1 BCA ¶ 36,909 at 179,823, finding 100. Moreover, MOQA is also incorrect in contending that Mr. Lawrence was testifying only about materials left

---

[1] Thus, although MOQA contends that it is entitled to about $320,000 more because it completed all of the work for the compound size modification, we found that the largest component of this was the wall around the new perimeter that had to be removed. *Id.* at 179,825, findings 114-15.

2

on site. The testimony we relied upon for finding 110 concerned the document found at Rule 4, tab 419 at 18, which was a photo of the building foundation. He testified:

> Some of this stuff from the pictures that I got show cracks, and deformed work, and rebar laying on the ground which shows me that it wasn't properly inspected by them. It was just put in and thrown in there. And we were going to reject that.

(Tr. 2/58)

Finally, MOQA also challenges the Corps' reduction of earlier payments for mobilization and security payments. MOQA is correct when it observes that contracting officer's representative, Theodore Champine, testified inaccurately that the contract required MOQA to be paid 60% for mobilization and 40% for demobilization. But the evidence in the record does not go much beyond that. Other than a contract line item number (CLIN) for Defense Base Act insurance, the contract as awarded contained only one CLIN, which was to site adapt the design and build the project (CLIN 0001). (R4, tab 7 at 3) There was no mobilization CLIN. The parties apparently reached an agreement where they broke down CLIN 0001 into "cost loaded" items or "sub-CLINs" (tr. 1/138), but neither party presented evidence as to how this was done or what had to be accomplished for MOQA to paid in full for the sub-CLINs.

The parties agree that there was a sub-CLIN for mobilization for $250,000. MOQA contends that the entire sum was due on mobilization while the Corps contends it was split between mobilization and demobilization. Neither party has directed us to a provision in the contract or other documents that supports its position. Because MOQA has the burden of proof on its money claim, we hold that MOQA has not met its burden on the mobilization issue. *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (en banc). The same holds true for MOQA's project security issue. The evidence is inadequate for us to award MOQA any money.[2]

---

[2] MOQA's did not make its arguments concerning mobilization and security payments in its post-hearing briefs.

3

## CONCLUSION

MOQA's motion is denied.

Dated: 27 March 2018

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60456, Appeal of MOQA-AQYOL JV, LTD., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

4